UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAUN BONKOWSKI,

                  Plaintiff,                       Case Number 08-15319
                                                    Honorable David M. Lawson

v.

ALLSTATE INSURANCE COMPANY,

                  Defendant.

_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTIONS FOR JUDGMENT AS A MATTER OF LAW, NEW TRIAL, AND SANCTIONS

This case is one of a series of lawsuits filed by the plaintiff to recover insurance benefits under Michigan's No-Fault Insurance Act. That law allows a person injured in an automobile accident to recover certain costs and expenses related to injuries sustained in the accident. Although multiple items of claimed economic damages were disputed by defendant Allstate Insurance Company, the main controversy in this and the other lawsuits filed by the plaintiff was the value of the attendant care provided to the plaintiff by his father. The first lawsuit, filed in state court, resulted in a substantial verdict for the plaintiff. In this case, a jury determined that the defendant did not owe any money to the plaintiff for attendant care, other than what it had continued to pay on a monthly basis since the time of the first trial. The plaintiff argues that he is entitled to a judgment as a matter of law because the sole issue before the Court was the plaintiff's changed circumstances since the verdict in the first case and the defendant failed to present any evidence on this issue. He also contends that he should have a new trial because of the failure to give his requested jury instruction on changed circumstances, the exclusion from evidence of the jury verdict in the prior trial, and defense counsel's improper litigation strategy that allegedly turned the trial into

an impeachment of the prior jury and plaintiff's counsel.  Earlier, the plaintiff filed a motion to sanction the defendant because it did not answer adequately certain allegations in the complaint. The plaintiff has not documented many of his arguments with citations to the record or applicable authority, and none of the arguments has merit.  Therefore, the Court will deny the motions.

## I.  Facts and proceedings

On June 3, 2001, plaintiff Shaun Bonkowski, while walking home, was struck by a motor vehicle whose unknown driver fled the scene of the accident.  The plaintiff was found in the early morning hours of June 4, 2001 in the ditch of his front lawn after having remained outside, unconscious, in forty to fifty degree weather.  After being flown to St. Joseph Mercy Hospital, he was immediately resuscitated and taken to the operating room.  The plaintiff underwent multiple surgeries during his more than two month stay at St. Joseph Hospital, including a tracheostomy and surgeries to his legs and cervical spine.

Due to the extent of the plaintiff's injuries, his family consulted with Craig Hospital in Denver, Colorado, a premier center for specialty rehabilitation and research for spinal cord and traumatic brain injuries, and he was admitted for treatment there on August 14, 2001.  On December 9, 2001, around the time of the plaintiff's discharge, Dr. Mark P. Cilo of Craig Hospital described the plaintiff's remaining medical issues to include a spinal cord injury with quadriplegia; traumatic brain injury complicated by prolonged hypothermia and probably hypoxia with retrograde amnesia of less than 24 hours, loss of consciousness of approximately two days and posttraumatic amnesia of several weeks; a history of subdural hematoma; respiratory failure requiring ventilator support; prolonged hypothermia requiring cardipulmonary bypass for rewarming; bilateral tibial fractures requiring post intramedullary nailing; a neurogenic bladder requiring an urethral catheter; a

neurogenic bowel; a percutaneous gastrostomy tube in place for feedings; malnutrition due to poor intake and poor tolerance of tube feedings; recurrent fevers and pneumonias, with multiple antibiotics provided; contractures in both upper extremities; anxiety and depression; and severe pain due to his multiple problems, particularly contractures.

Craig Hospital educated and trained the plaintiff's father, Andrew Bonkowski, to provide for his son's care. Examples of the skilled nature of care that Andrew learned and provides include daily manual bowel evacuation (an invasive treatment requiring knowledge of body handling and positioning), bladder care that requires a "skilled eye" to observe and make appropriate decisions, medication assistance, and transfer assistance. Since the plaintiff's discharge from Craig Hospital on December 1, 2001, he maintains that his father has cared for him twenty-four hours per day in accordance with the training and the prescriptions of his physicians.

Michigan's No-Fault Insurance Act, Mich. Comp. Laws § 500.3101 *et seq.*, abolished third-party tort liability for certain economic damages arising out of a motor vehicle accident and provided a substitute via private insurance. These economic damages include wage loss below the statutory limit, medical costs, and other allowable expenses, including "reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation," collectively known as Personal Injury Protection, or "PIP," benefits. *See* Mich. Comp. Laws §§ 500.3107-.3110; *In re Felski*, 277 B.R. 732, 733-34 (E.D. Mich. 2002). The Michigan state courts have also approved no-fault compensation for care provided by family members of the injured individual. *Booth v. Auto-Owners Ins. Co.*, 224 Mich. App. 724, 727-29, 569 N.W.2d 903, 904-05 (1997) (citing *Reed v. Citizens Ins. Co. of Am.*, 198 Mich. App. 443, 499 N.W.2d 22 (1993), *Botsford Gen. Hosp. v. Citizens Ins. Co.*, 195 Mich. App. 127, 489 N.W.2d 137

(1992), *Van Marter v. Am. Fid. Fire Ins. Co.*, 114 Mich. App. 171, 318 N.W.2d 679 (1982), and *Visconti v. DAIIE*, 90 Mich. App. 477, 282 N.W.2d 360 (1979)).

Three requirements must be satisfied to hold a no-fault insurer responsible for these benefits: (1) the expense must have been incurred, (2) the expense must have been reasonably necessary for the injured person's care, recovery, or rehabilitation, and (3) the amount of the expense must have been reasonable. *Nasser v. Auto Club Ins. Ass'n*, 435 Mich. 33, 50, 457 N.W.2d 637, 645 (1990), *Moghis v. Citizens Ins. Co. of Am.*, 187 Mich. App. 245, 247, 466 N.W.2d 290, 292 (1990). The plaintiff must prove that the expenses were reasonable under the circumstances in order to recover no-fault benefits. *Nasser*, 435 Mich. at 49, 457 N.W.2d at 645.

Litigation between the parties in this case began on October 4, 2001 in state court and addressed the plaintiff's expenses incurred from the date of his admission to Craig Hospital until the date of trial. In that case, as here, the plaintiff alleged that his father provided attendant care 24 hours per day, seven days per week. The case resulted in a jury verdict on July 7, 2006. On the question of the value of the attendant care the plaintiff incurred from the time of his discharge from Craig Hospital to the date of the verdict, for which Allstate was obliged to reimburse him, the jury was asked, "What is the amount of allowable expenses owed to the plaintiff (include only expenses not already paid by the defendant)?" The jury responded: $1,381,114.00. The defendant had paid $19 per hour for that time period, or $759,240 in total; the jury verdict averaged to an additional $34.50 per hour for a total of $53.50 per hour when divided by a figure representing 24-hour-seven-day-per-week care over the entire period.

-4-

The defendant filed an appeal in the Michigan Court of Appeals in which it argued that the $19-per-hour compensation rate it had been paying was reasonable. The Michigan Court of Appeals sided with the plaintiff:

> The only legally relevant question presented to the jury was whether the compensation [Allstate] paid to Andrew was reasonable. The record contains sufficient evidence to conclude that the jury rejected [Allstate's] position. Substantial evidence was introduced chronicling Andrew's everyday care of [the] plaintiff. Not only did Andrew provide care consistent with that of a licensed health care professional, but ample evidence was presented to support the conclusion that Andrew's care was more conducive to [the] plaintiff's care, recovery, or rehabilitation than care that could have been provided by a licensed health care professional.
>
> . . . Although the verdict itself is large, there is nonetheless evidence to support the jury's determination that the compensation provided to Andrew by [Allstate] was not adequate, given Andrew's training received at the Craig and the actual attendant care Andrew provided to [the] plaintiff. The evidence was sufficient for reasonable jurors to conclude that the reasonable compensation due Andrew was substantially more than the compensation paid by [Allstate]. Thus, the jury verdict must stand.

*Bonkowski v. Allstate Ins. Co.*, 281 Mich. App. 154, 169, 761 N.W.2d 784, 793-94 (2008). The defendant chose not to continue its appeal to the Michigan Supreme Court and paid the outstanding attendant care benefits.

Thereafter, however, the defendant continued to pay attendant care benefits at the $19-per-hour rate it had been paying before the jury verdict. As a result, the plaintiff filed the present complaint in this Court seeking allowable expenses for both attendant care benefits and housing accommodations. The plaintiff filed a motion for partial summary judgment concerning his claim for attendant care benefits on June 2, 2009, arguing that the state court verdict settled that question. The Court denied that motion following a hearing on November 30, 2009. On August 17, 2010, trial commenced and deliberations began and concluded on August 26, 2010. The jury returned a verdict for the defendant on count 1 for allowable expenses for attendant care and for the plaintiff on his

claim for medical expenses for dental care.  The jury determined that the defendant owed the plaintiff $12,500 for dental care costs, but found that this expense was not overdue so as to trigger statutory penalty interest or attorney's fees.  The Court entered a final corrected judgment on September 7, 2010.

Prior to trial, the plaintiff filed a motion for sanctions against the defendant.  Following the jury's verdict, the plaintiff also filed a motion entitled "Renewed Motion for Judgment as a Matter of Law or in the Alternative for a New Trial" on September 21, 2010.  The defendant has filed responses to both motions, but the plaintiff has not filed a reply.  Argument on the motions was heard on November 22, 2010.  In the meantime, the plaintiff has filed a third lawsuit for the value of attendant care benefits incurred since the jury verdict in this case.  Allstate presumably has continued to pay Andrew Bonkowski for providing 24/7 attendant care to Shaun at the $19-per-hour rate.

## II.  Motion for judgment as a matter of law

The plaintiff seeks judgment as a matter of law because he believes that the only issue properly before this Court was whether there was a significant change in the plaintiff's circumstances since the time of the first jury verdict and the defendant presented no evidence on that point.  He says that usually he would rely on his trial brief for a recitation of the facts, but that this brief was stricken and the Court has not yet reinstated it pursuant to his request.  As with many of plaintiff's counsel's factual assertions and arguments, he is simply incorrect.  In this instance, the plaintiff filed a motion to reinstate the trial brief and that motion was granted on August 26, 2010, before he filed the present motion.  In the present motion, the plaintiff asks the Court to enter

judgment in an amount equal to the number of days of care, for 24 hours each day, multiplied by an hourly rate that the plaintiff has calculated from the state court jury verdict.

Federal Rule of Civil Procedure 50(b) permits a party to renew a motion for judgment as a matter of law after judgment is entered on a jury verdict.  "A post-trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion."  Fed. R. Civ. P. 50 Comm. Notes to 1991 amendment; *see also Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 316 (6th Cir. 2007), *Am. & Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 160 (6th Cir. 1997), *Bourgeois v. Strawn*, 501 F. Supp. 2d 978, 984-85 (E.D. Mich. 2007).  However, the Sixth Circuit employs a relaxed approach to that requirement, noting that if the initial motion "provid[es] notice to the court and opposing counsel of any deficiencies in the opposing party's case prior to sending it to the jury," then the Court should "take a liberal view of what constitutes a pre-verdict motion sufficient to support a post-verdict motion."  *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 492-93 (6th Cir. 2008) (quoting *Kusens v. Pascal Co., Inc.*, 448 F.3d 349, 361 (6th Cir. 2006)).

"In diversity cases, when a Rule 50 motion for judgment as a matter of law is based on a challenge to the sufficiency of the evidence, this Court applies the standard of review used by the courts of the state whose substantive law governs the action."  *Kusens*, 448 F.3d at 360 (citing *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 506 (6th Cir. 1998), and *K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 176 (6th Cir. 1996)); *see also Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 466 (6th Cir. 2009).  Under Michigan law, "[t]he standard of review for judgments notwithstanding the verdict requires review of the evidence and all legitimate inferences in the light most favorable to the nonmoving party."  *Orzel by Orzel v. Scott Drug Co.*, 449 Mich. 550, 557, 537 N.W.2d 208, 212 (1995).  "'The motion may be granted only if in viewing the evidence in the light

most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party'. . . . Neither the district court nor the reviewing court may reweigh the evidence or assess the credibility of witnesses." *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007) (quoting *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir. 2001)); *see also Parker v. Gen. Extrusions, Inc.*, 491 F.3d 596, 602 (6th Cir. 2007). "[I]f there is evidence in the record from which the jury could reasonably find [for the non-moving party,] the Court must respect the jury's verdict and deny the [movant's] motion for new trial." *Bourgeois*, 501 F. Supp. 2d at 986-87.

The main — in fact the only — premise of the plaintiff's Rule 50(b) motion is that the sole issue before the Court was whether the plaintiff's condition and care needs had changed from the time of the verdict in the first trial and the defendant failed to provide any evidence on that issue. The plaintiff argues that he presented the only evidence on the issue and that his evidence supported a lack of change.

The plaintiff is incorrect on two counts: the change (or lack thereof) in his condition was not the only issue to be resolved by the jury, and even if it were, the defendant presented sufficient evidence of the plaintiff's changed circumstances to support the jury's verdict. The plaintiff did not cite the trial record to support his argument. In contrast, in its response to the plaintiff's motion, the defendant highlighted the following points of evidence from the record tending to show changed conditions:

- Dr. Perlman admitted that he had improperly testified at the first trial about the plaintiff's catheter. Def.'s Resp. at 6 & Ex. B, Trial Testimony of Dr. Perlman at 191-92.

- Dr. Perlman testified that the 24-hour-care prescription was due to the plaintiff's tracheotomy and related care issues, and that care could be scaled back if the plaintiff

-8-

was removed from the ventilator, which happened during the period of time at issue in this trial. *Id.* at 6, Ex. C, Trial Testimony of Dr. Perlman at 157-58, Ex. D, Trial Testimony of Andrew Bonkowski at 730.

- The first trial did not include evidence of dental care neglect, while the second trial did. *Id.* at 6.

- Paula Nault testified that she did not believe that the plaintiff had the same medical issues now that he previously did, specifically noting his new dental condition. *Id.* at 6 & Ex. F-G, Trial Testimony of Paula Nault at 978 & 990.

- Andrew Bonkowski testified that the plaintiff's cognitive abilities had improved and that he no longer required a pic-line. *Id.* at 6, Ex. D, Trial Testimony of Andrew Bonkowski at 730, Ex. E, Trial Testimony of Andrew Bonkowski at 731.

- Testimony from Debra Yeary and Dr. Jefrey Fishman showed that the plaintiff's skin ulcers, an issue at the first trial, had since healed. *Id.* at 7.

- Nora Vinic testified that she would classify Andrew Bonkowski as no more than a high tech aide after reviewing the plaintiff's treatment during the period at issue in this case. *Ibid.* & Ex. H, Trial Testimony of Nora Vinic at 1106.

The defendant also listed several medical issues from the first trial that were no longer issues during the second trial, including: a right segmental fibula fracture, a right distal third tibia fracture, a left mid-shaft tibia fracture, presumed cervical fractures, respiratory failure and requirement for ventilator support, the requirement for cardiopulmonary bypass or rewarming, the need for intramedullary nailing, percutaneous gastronomy tube, malnutrition, and chemical pancreatitis. The defendant also pointed to improvements in the plaintiff's medical paraphernalia and treatment options, including botox injections and an arm brace to improve his range of motion, a new wheelchair with better pressure points, a decrease in the size of his decubitus ulcer, a decrease in the frequency of his doctor's appointments, and the ability to use a computer.

Viewing the evidence and drawing all reasonable inferences in the light most favorable to the defendant, *see Orzel*, 449 Mich. at 557, 537 N.W.2d at 212, the defendant has presented several

examples of major changes in the plaintiff's condition that could affect the care he required and was provided. At minimum, that creates a fact issue for the jury; the Court cannot conclude that reasonable minds could reach only one conclusion in favor of the plaintiff. *Radvansky*, 496 F.3d at 614. Since there is evidence in the record supporting the jury's verdict, the Court must deny the plaintiff's renewed motion for judgment as a matter of law. *Bourgeois*, 501 F. Supp. 2d at 986-87.

In addition, the plaintiff again argues that the issues in this case are identical to those in the prior case and that the jury should not have been allowed to redetermine the value of reasonable care. The Court previously addressed that issue when it denied the plaintiff's motion for partial summary judgment and concluded that the second complaint covered a different time period than the first complaint in state court. Therefore, the issues before the Court were not identical to those previously tried and collateral estoppel did not preclude the jury's consideration of those issues in this Court. The plaintiff has provided no new argument and pointed to no new authority to change the Court's decision on this issue. Instead, the plaintiff cited only *Manley v. DAIIE*, 425 Mich. 140, 388 N.W.2d 216 (1986), and *Juzba v. State Farm Mut. Auto. Ins. Co.*, No. 283820, 2009 WL 794683 (Mich. App. Mar. 26, 2009), which the Court previously considered in denying the plaintiff's motion for partial summary judgment.

Therefore, the plaintiff's argument that the only issue before the Court was a change in circumstances lacks merit. The defendant provided evidence of the plaintiff's changed condition and care needs and the poor care provided by Andrew Bonkowski and pointed to those trial excerpts in its response. Viewing the evidence in the light most favorable to the defendant, there was sufficient evidence to support the jury's verdict. The plaintiff's motion for judgment as a matter of law will be denied.

III.  Motion for new trial

The plaintiff seeks a new trial for six reasons, which can be grouped into the following categories:

1.      The improper denial of a jury instruction on changed circumstances.

2.      The improper introduction of evidence concerning the plaintiff's medical condition during the period of time at issue in the first trial, and the improper exclusion of the jury's verdict as evidence on the morning of trial.

3.      The defense counsel's improper arguments lambasting plaintiff's counsel and the jury in the first trial.

Rule 59 permits a Court to grant a new jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A); *see also Bourgeois*, 501 F. Supp. 2d at 985.  Although Rule 59 does not specify the grounds for granting a new trial, courts have determined that "a new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1045-46 (6th Cir. 1996); *see also Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940).  This Court also has the discretion to consider other grounds "'rais[ing] questions of law arising out of substantial errors in admission or rejection of evidence or instructions to the jury.'" *Bourgeois*, 501 F. Supp. 2d at 985 (quoting *Montgomery Ward*, 311 U.S. at 251).  "The absence of specific grounds should not obscure the governing principle.  The court has the power and duty to order a new trial whenever, in its judgment, this action is required in order to prevent injustice." Wright, Miller, & Kane, Federal Practice and Procedure § 2805.

-11-

"In considering a motion for a new trial on the ground that the verdict is against the weight of the evidence, the court is not to set aside the verdict simply because it believes that another outcome is more justified.  [Instead,] [t]he court is to accept the jury's verdict if it is one which reasonably could have been reached." *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007) (citations and quotations omitted).  The Sixth Circuit has repeatedly cautioned that "close scrutiny" is necessary in this situation. *See, e.g.*, *ibid.*; *Duncan v. Duncan*, 377 F.2d 49, 54 (6th Cir. 1967). "The Supreme Court has noted that 'the authority of trial judges to grant new trials' pursuant to Rule 59(a) 'is large.'" *Bell v. Johnson*, 404 F.3d 997, 1002 (6th Cir. 2005) (quoting *Gasperini v. Ctr. for the Humanities, Inc.*, 518 U.S. 415, 433 (1996)).

## A.  Jury Instructions

Federal Rule of Civil Procedure 51 governs jury instructions in federal court and requires that "[a] party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection."  Fed. R. Civ. P. 51(c)(1).  The objection must be made "out of the jury's hearing before the instructions and arguments are delivered."  Fed. R. Civ. P.  51(b)(2).  The rule also states that "[a] party may assign as error . . . a failure to give an instruction, if that party properly requested it and — unless the court rejected the request in a definitive ruling on the record — also properly objected."  Fed. R. Civ. P. 51(d)(1)(B).

The failure of a party to object in this manner is viewed by many courts as a waiver of the party's objection to the jury instruction.  *See, e.g.*, *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 493-94 (6th Cir. 2008) (determining that the defendant had waived its jury instructions argument because it had not raised it in a pre-verdict motion for judgment as a matter of law and had failed

-12-

to request or offer jury instructions on its theory of municipal liability or to object to the jury instructions without this language); *Clarksville-Montgomery Cnty. School Sys. v. U.S. Gypsum Co.*, 925 F.2d 993, 1006 (6th Cir. 1991) ("We first note that Clarksville's failure to object to a specific charge before and after the jury charge is given constitutes waiver of the objection." (citing *Murphy v. Owens-Ill., Inc.*, 779 F.2d 340, 345-46 (6th Cir.1985)); *see also Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 450, 453 (6th Cir. 2000) (determining that the plaintiff had properly requested a failure-to-warn instruction on the record and had not waived this request; since the district court's decision to deny this request was improper, the appellate court remanded the case for a new trial).

Nonetheless, "[a]lthough the language of Rule 51 suggests that litigants must timely 'use it or lose it,' a litigant's failure to object to a jury instruction does not create a jurisdictional bar to review." *Reynolds v. Green*, 184 F.3d 589, 594 (6th Cir. 1999) (citing *City of Springfield v. Kibbe*, 480 U.S. 257, 259 (1987)).  Rule 51 allows consideration of an unpreserved jury instruction argument under a plain error standard if the "error in a jury instruction is obvious and prejudicial." *Sovereign Order of Saint John of Jerusalem, Inc. v. Grady*, 119 F.3d 1236, 1243 (6th Cir. 1997) (citing *Chonich v. Wayne Cnty. Cmty. Coll.*, 973 F.2d 1271, 1275 (6th Cir. 1992); Fed. R. Civ. P. 51(d)(2); *Young v. Langley*, 793 F.2d 792, 795 (6th Cir. 1986)).  However, a jury instruction error that is harmless will not furnish a basis for relief.  *Johnson Controls, Inc. v. Jay Indus., Inc.*, 459 F.3d 717, 727 (6th Cir. 2006).

Timing is important.  As the Sixth Circuit recently explained:

At a minimum, the Federal Rules of Civil Procedure require at least one objection on the record to preserve an issue for review under a standard less stringent than that of plain error.  *See* Fed. R. Civ. P. 51(c), (d).  Moreover, we have long held that in order to avoid waiver, an objection must not only be made prior to the jury's being charged, but also *renewed* after it is charged.  "'The law in this circuit generally requires a formal objection, which should in most circumstances be made both before

-13-

and after the jury instructions are read to the jury.'" *Rogers v. Norfolk Southern Ry. Co.*, 126 F. App'x 694, 697 (6th Cir. 2005) (quoting *Preferred RX, Inc. v. Am. Prescription Plan, Inc.*, 46 F.3d 535, 547 (6th Cir. 1995)). And "[c]ounsel's failure to make an objection at trial 'results in a waiver of the objection advanced on appeal, and the jury verdict can be reversed only for plain error.'" *Id.*

*Scott v. Miller*, 361 F. App'x 650, 653 (6th Cir. 2010).

In the present case, the plaintiff failed to object to the instruction he now challenges prior to the Court instructing the jury. However, following jury instructions, the Court went back on the record without the jury in the courtroom and plaintiff's counsel raised his objection to the lack of an instruction on changed circumstances. Because Rule 51 requires the party to object "out of the jury's hearing *before the instructions and arguments are delivered*," Fed. R. Civ. P. 51(b)(2) (emphasis added), the Court may consider the plaintiff's objection to be waived, *see*, *e.g.*, *Ford*, 535 F.3d at 493-94; *Clarksville-Montgomery Cnty. School Sys..*, 925 F.2d at 1006.

Even if the argument is not waived, it lacks merit. As noted above, the issues before the Court were not limited to the change in the plaintiff's care requirements, but they also included the care he required and received during the time period following the first trial and whether the amount of benefits he requested for that care was reasonable. The jury instruction the plaintiff requested before trial was:

> Defendant Allstate Insurance Company has the burden of proof on its defense that there has been a substantial change in the facts and circumstances in Shaun Bonkowski's need for attendant care.
> You are instructed that the reasonable value of the attendant care services provided by Andrew Bonkowski for Plaintiff Shaun Bonkowski has been determined in the past to be $2,140,810.00 for 1,666 days of attendant care service. Defendant has the burden of proving the following:
> (a) That there has been a substantial change in the facts and circumstances in Shaun Bonkowski's need for attendant care services since July 7, 2006 and
> (b) if there has been a substantial change in the facts and circumstances in Shaun Bonkowski's need for attendant care services since July 7, 2006, the change in the reasonable value of the care.

-14-

Pl.'s Proposed Jury Inst. at 4.  The only authority the plaintiff cited in support of that statement of the law was *Manley v. DAIIE*, 425 Mich. 140, 388 N.W.2d 216 (1986).  *Manley* certainly discussed the idea that injured persons and insurance companies "are entitled to a redetermination from time to time of the amounts properly allowable for nurse's aides or for room and board, including the services of the [family members]." *Id.* at 158, 388 N.W.2d at 224.  However, the portions of *Manley* that discuss review for change in circumstances, which the plaintiff cited in his brief, do not address which party has the burden of proof on that issue.  The proposed instruction assigns the burden to the defendant without any legal support for that proposition.  The plaintiff pointed to none and the Court did not locate any.  Therefore, the Court properly denied the requested jury instruction, and the denial did not affect the substantial rights of the plaintiff.  Furthermore, the plaintiff has presented no evidence or argument that he was prejudiced by this decision.

### B.  Evidentiary Issues

Rule 59 permits a court to grant a new trial where the trial was unfair to the movant, or the proceedings were influenced by prejudice or bias, see *Holmes*, 78 F.3d at 1045-46, but not every trial error warrants a new trial:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.  The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

*Kulling v. Grinders for Indus., Inc.*, 185 F. Supp. 2d 800, 804 (E.D. Mich. 2002) (quoting Fed. R. Civ. P. 61 (1937)).

-15-

The plaintiff argues that the Court improperly excluded evidence of the jury verdict from the first trial. That is not quite accurate. In its order on August 18, 2010, the Court allowed the plaintiff to "introduce evidence that the defendant paid reimbursement for attendant care benefits, but may not introduce evidence of the jury verdict in the prior state court trial as proof of the reasonable value of these benefits. The plaintiff may introduce . . . the jury verdict as evidence for a different purpose after obtaining the Court's permission on the record." The record indicates the Court found the introduction of a specific amount or rate of care for a different time period to be prejudicial to the defendant and would mislead the jury in determining the reasonable value of the plaintiff's care for the period of time at issue in this case. As it turned out, however, evidence of the prior jury verdict was received in evidence on the question whether Allstate's failure to pay an attendant care rate higher than $19 was unreasonable such that it also would be liable for penalty interest and attorney's fees.

The Court believes that limiting the purpose of the evidence of the prior jury verdict was the correct and most prudent course of action. The issue in the case focused on the reasonable value of attendant care Andrew Bonkowski provided to his son during the relevant time period, which did not overlap the period covered by the earlier verdict. Under the No-Fault Act, the plaintiff was required to prove that the amount he claimed for attendant care reimbursement was reasonable, necessary, and incurred. There was evidence that his condition and circumstances had changed, so the argument that the prior jury verdict compelled a particular hourly rate for the care, when that rate was derived from an unknown formula apparently used by a jury in a different although related case, carried the danger of misleading the jury as to its assigned task. The Court may exclude evidence or limit its use when it poses a "likelihood of misleading the jury and confusing the issues."

-16-

*Olin-Mathieson Chem. Corp. v. Allis-Chalmers Mfg. Co.*, 438 F.2d 833, 838 (6th Cir. 1971). The Sixth Circuit has explained:

> Evidence of a prior verdict is likely to mislead the jury because "[a] jury is likely to give a prior verdict against the same defendant more weight than it warrants. Admission of a prior verdict creates the possibility that the jury will defer to the earlier result and thus will, effectively, decide a case on evidence not before it." In essence, the jury may "import the whole verdict . . . from the prior proceeding."

*Blakely v. City of Clarksville*, 244 F. App'x 681, 684 (6th Cir. 2007) (citations omitted).

Of course, the jury did learn of the prior verdict, and plaintiff's counsel argued that the hourly rate he derived from it should have served as a benchmark that Allstate should not have disregarded. That argument was properly directed toward the question whether Allstate's attendant care payments were overdue, a question, as it turns out, the jury did not have to reach because the plaintiff failed to persuade it that the value of the attendant care furnished by Andrew Bonkowski exceeded $19 per hour. But limiting the jury's use of the evidence was proper, and it does not provide a ground for a new trial.

Plaintiff's counsel also complains that the timing of the Court's ruling on that evidentiary issue caused him distress that altered the presentation of his case unreasonably. That argument is not well taken. The Court originally ruled on motions *in limine* filed in accordance with the scheduling order at the final pretrial conference, which was two weeks prior to trial. The Court indicated an intention to allow the jury to hear evidence of the prior jury verdict as evidence of the value of the attendant care in this case. The defendant moved for reconsideration, and on the morning of jury selection, the Court heard additional arguments on the subject and announced its ruling limiting the use of the evidence. Plaintiff's counsel then asked for additional time to adjust his opening statement to account for the ruling, and the Court agreed to proceed with jury selection

-17-

and defer opening statements to the following morning. The next morning, plaintiff's counsel changed his mind and asked for a mistrial. The Court denied the request because plaintiff's counsel could not identify any prejudice that would inure to the presentation of his case, which he had been preparing for two years, from the alteration of a ruling made two weeks earlier.

Although at the time of the mistrial motion the jury had been selected, it had not been sworn. The proper motion, therefore, would have been for a continuance. The Court treated the motion as such. Generally speaking, the district court has great discretion in controlling its trial docket, and a request for a continuance is addressed to the court's discretion. *Perkins v. American Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001); *Anderson v. Sheppard*, 856 F.2d 741, 748 (6th Cir. 1988) ("The matter of continuance is traditionally within the discretion of the trial judge." (internal quotations omitted)); *see also United States v. Warshak*, 631 F.3d 266, 298 (6th Cir. 2010); *Lockett v. Arn*, 740 F.2d 407, 413 (6th Cir. 1984). Factors for the Court to consider in determining whether to grant a continuance include whether the moving party has demonstrated that he would be prejudiced by the denial of the motion and whether "additional time would have produced additional evidence or witnesses." *Perkins*, 246 F.3d at 605-06. An abuse of discretion exists only if "'the denial [of the continuance] was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination.'" *Ilic-Lee v. Mukasey*, 507 F.3d 1044, 1047 (6th Cir. 2007) (quoting *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir. 2006)). In this case, the Court explained in detail on the record its reasons for proceeding with the trial after the jury had been selected and an overnight continuance had already been granted at the plaintiff's request. Relief from the denial of a continuance is not warranted absent a showing of actual prejudice. *United States v. Pacheco*, 466 F. App'x 517, 522

-18-

(6th Cir. 2012).  In this case, plaintiff's counsel argued that he would have to change his trial strategy, which would entail a different approach to cross-examining the defendant's claims adjuster, and perhaps calling his witnesses in a different order.  Those are the sorts of adjustments that seasoned trial counsel deal with regularly.  Even in hindsight, plaintiff's counsel has not identified any prejudice that resulted from the timing of the Court's evidentiary ruling.

The plaintiff also contends that evidence of attendant care provided during the earlier period should not have been allowed because it was irrelevant and prejudicial.  However, evidence of the earlier care was pertinent to the issues of the level of care needed during the prior period and any change in that level that might have occurred, Andrew Bonkowski's degree of skill in furnishing the care and its impact on the value of that care, and the relative needs of the plaintiff during the comparative periods.  The evidence was not improperly admitted.

The general rule is that "[n]o error in either the admission or the exclusion of evidence . . . is ground for granting a new trial . . . unless refusal to take such action appears to the court inconsistent with substantial justice."  *Kulling*, 185 F. Supp. 2d at 804.  The Court finds no basis to grant a new trial on the ground that evidentiary rulings were erroneous.

### C.  Defense counsel's arguments

The plaintiff also argues that the Court improperly allowed the defense counsel to turn this trial into an impeachment of the plaintiff's counsel and of the previous jury.  This argument is difficult to assess because the plaintiff failed in his motion to identify any points of defense counsel's argument or trial testimony that were improper or any times when plaintiff's counsel objected to such statements.  To succeed on this motion, the plaintiff bears the heavy burden of making "a concrete showing that the misconduct of counsel consistently permeated the entire trial

from beginning to end." *Sutkiewicz v. Monroe Cnty. Sheriff*, 110 F.3d 352, 361 (6th Cir. 1997); *Shabazz v. Martin*, No. 00-73005, 2007 WL 2782054, at *1 (E.D. Mich. Sept. 24, 2007) (citing *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980); *In re Air Crash Disaster*, 86 F.3d 498, 524 (6th Cir. 1996)). The complaining party must make a timely objection, and even where a party makes the necessary objections, he also must show that opposing counsel's arguments were prejudicial and influenced the jury's verdict. *Fuhr v. Sch. Dist. of the City of Hazel Park*, 364 F.3d 753, 760 (6th Cir. 2004). The plaintiff has failed to carry this burden of showing that defense counsel's conduct "permeated the entire trial." By failing to point to any citations in the trial record, the plaintiff also has failed to carry his burden of demonstrating prejudice from the comments. Therefore, the Court is unable to find a "reasonable probability that the verdict . . . has been influenced by such conduct." *Twachtman v. Connelly*, 106 F.2d 501, 509 (6th Cir. 1939); *see also Peter Kiewit Sons' Co.*, 624 F.2d at 756.

### IV. Motion for sanctions

The plaintiff also has moved under Rule 11 for sanctions against the defendant, arguing that the defendant improperly denied or alleged lack of sufficient information in response to 29 allegations in the complaint, when the defendant allegedly had this very information in its claim file or from the prior trial in this case. The defendant responds that the period of time alleged in the complaint is different than the period covered by the previous lawsuit, and the defendant is not required to concede a litany of admissions when it seeks to contest the reasonable value of the attendant care for the new period.

Under Rule 11, when an attorney signs an answer to a complaint, he certifies that "the denials of factual contentions are warranted on the evidence or, if specifically so identified, are

-20-

reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b)(4). Signing a pleading carries consequences. "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). In the Sixth Circuit, "the test for whether Rule 11 sanctions are warranted is whether the conduct for which sanctions are sought was 'reasonable under the circumstances.'" *Salkil v. Mount Sterling Twp. Police Dep't*, 458 F.3d 520, 528 (6th Cir. 2006) (quoting *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997)). "[B]efore an award of attorneys' fees may be made under the rule, it must be shown that the fees were incurred because of the filing of an improper pleading." *Bodenhamer Bldg. Corp. v. Architectural Research Corp.*, 989 F.2d 213, 218 (6th Cir. 1993).

The complaint in this case contains detailed factual allegations concerning Shaun Bonkowski's accident, the treatment he received thereafter, his physical condition, and the care provided by his father. Compl. ¶¶ 6-8, 11-22, 24-29, 33-39, 43. The defendant stated in its answer that it could not admit most of these allegations because it lacked sufficient information.

In paragraphs 6, 8, 33, 34, 35, 36, and 38 of the plaintiff's complaint, the plaintiff alleges that the defendant is obligated to pay insurance benefits to the plaintiff, that the plaintiff has fully complied with the insurance policy terms, that the plaintiff has provided reasonable proof that he incurred allowable expenses on a 24-hour basis, that the plaintiff provided reasonable proof of the plaintiff's amount of loss incurred on a 24-hour basis, that the plaintiff provided reasonable proof that the plaintiff's amount of loss on a 24-hour basis was $53.50, and that the defendant has refused to pay all of the attendant care benefits to the plaintiff even though the plaintiff fully complied with his insurance policy.

-21-

The defendant justified its claims of insufficient knowledge with respect to those allegations by arguing that the defendant's obligation to pay benefits was contingent upon the plaintiff's reasonable proof, which the plaintiff did not furnish.  It is reasonable for the defendant to assert a lack of knowledge where it also contests the reasonableness of the proof provided by the plaintiff. Furthermore, in denying the plaintiff's motion for partial summary judgment, the Court noted that the present lawsuit involved a different time period than that covered by the previous trial. Therefore, the proof provided in the previous trial may not adequately support the fees requested in the present complaint and it would not necessarily be improper for the defendant to deny knowledge of those allegations.

The plaintiff has not attempted to demonstrate how the defendant's alleged misrepresentations caused the plaintiff to incur a greater amount of attorney fees nor has he detailed the allegedly increased fees he incurred.  Therefore, the plaintiff is not entitled to sanctions based on these paragraphs of the defendant's answer.

Paragraphs 7 and 25 of the plaintiff's complaint allege that the plaintiff delivered the application for benefits to the defendant and that the plaintiff cannot be "left without this care" for any period of time because he would be exposed to life-threatening complications.  The defendant's assertion that it lacked sufficient information was reasonable under the circumstances.  That the plaintiff "caused to be delivered" the appropriate notification is vague because it could mean that either the plaintiff himself delivered it (even though he was incapacitated at the time) or that he told someone else to deliver it.  The defendant's confusion was reasonable and it appropriately answered the plaintiff's allegation.  Moreover, the statement that the plaintiff cannot be "left without this care" is also vague because it does not specify which care.  It is reasonable for the defendant to assert that

-22-

it lacks sufficient information on this allegation due to vagueness.  As such, the defendant did not violate Rule 11 with respect to these answers.

Allegations in paragraphs 11 through 21 of the plaintiff's complaint allege various facts from the night of the accident, the morning after the accident, the extent of the plaintiff's injuries immediately following the accident, the plaintiff's treatment, and other specific factual details surrounding the accident and the plaintiff's immediate recovery.  Allstate was not present during or immediately following the accident.  The only information that Allstate has regarding the accident itself came from the plaintiff.  Since the defendant lacks any personal knowledge of the circumstances surrounding the accident, it was reasonable for the defendant to assert that it lacked sufficient information.  Rule 11 sanctions are not warranted.

Paragraphs 22 and 24 of the plaintiff's complaint allege that the plaintiff's father, Andrew Bonkowski, learned and provided all of the care necessary to enable the plaintiff to live at home on a twenty-four hour basis since the plaintiff's discharge from the hospital.  The level of care provided by Andrew Bonkowski and the amount of time Andrew provided this care are contested issues in this case.  The defendant has pointed to evidence that the plaintiff's step-mother provided care in lieu of the plaintiff's father and that the plaintiff's father provided negligent care.  Because those issues are contested in the record, the defendant reasonably asserted that it lacked sufficient information to answer those allegations with specificity.  Although it would have been preferable simply to deny the allegations and explain the denial, asserting that the defendant lacked sufficient knowledge is not inaccurate.  Rule 11 sanctions are not appropriate based on the defendant's response to paragraphs 22 and 24 of the complaint.

Paragraph 29 of the plaintiff's complaint alleges that the defendant can only ask for reimbursement from its reinsurer for those amounts determined to be reasonable and necessary. The defendant argues that the plaintiff misstates the law and that under Michigan Compiled Laws 500.3104, an insurer can be reimbursed for 100% of any PIP benefits paid pursuant to a jury verdict even if they are not reasonable and necessary. Although it would have been more appropriate for the defendant to deny the allegation outright, there is no suggestion that the answer to that paragraph multiplied the cost of litigation. Sanctions are not appropriate for the defendant's answer to paragraph 29 of the complaint.

Paragraph 39 of the plaintiff's complaint alleges that the plaintiff made an early demand on the defendant to comply with the Michigan No-Fault Act. The defendant avoids the question by asserting that it has fully complied with the No-Fault Act and that the plaintiff has not done the same. However, that does not entirely respond to the complaint's allegation. The defendant would certainly know if it received an early demand to comply with the Michigan No-Fault Act. However, the defendant's argument actually seems to assert its belief that the plaintiff's demand was not reasonable or sufficient to allow the defendant to comply with the Act. As noted above, the reasonableness of the proofs offered is a contested factual issue in this matter; therefore, the defendant's response was not unreasonable. Moreover, as noted above, the plaintiff has not demonstrated or even argued that he has been forced to incur additional attorney's fees due to the defendant's answer and, therefore, he cannot collect attorney fees. Sanctions are not warranted for this response to the plaintiff's complaint.

Paragraph 43 of the plaintiff's complaint alleges that the defendant is responsible for the necessary modifications to his residence and related living expenses. The defendant again argues

-24-

that the plaintiff has failed to provide reasonable proof that the modifications were incurred as a result of the accident. That factual issue is contested and, for the reasons noted above, the defendant's answer is reasonable. In addition, the plaintiff has failed to prove that this misrepresentation caused him to incur additional attorney's fees and the plaintiff cannot collect attorney fees for this reason. Sanctions are not appropriate for this paragraph of the defendant's answer.

The Court does not find a basis in the defendant's answer to the complaint to award sanctions against it.

## V. Conclusion

The evidence at trial supports the jury's verdict. There is no valid bases to enter a judgment as a matter of law as requested by the plaintiff. The trial was fair and did not result in a miscarriage of justice. A new trial, therefore, is not warranted. There is no basis to award sanctions against the defendant for its answer to the complaint.

Accordingly, it is **ORDERED** that the plaintiff's renewed motion for judgment as a matter of law or new trial [dkt. #147] is **DENIED**.

It is further **ORDERED** that the plaintiff's motion for sanctions [dkt. #114] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  July 20, 2012

-25-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 20, 2012.

s/Deborah R. Tofil
DEBORAH R. TOFIL